Felix D. TAYLOR; Joseph TAYLOR, Jr.; Claude V.
NICHOLSON; Clarence T. NALLS, Jr.; and J. H.
BOOKER *v.* Stephen SAFLY, Secretary, Arkansas
State Board of Law Examiners; Charles B. ROSCOPF,
Chairman, Arkansas State Board of Law Examiners;
ARKANSAS STATE BOARD OF LAW EXAMINERS

79-170                                    637 S.W.2d 578

Supreme Court of Arkansas
Opinion delivered July 12, 1982

Petitioners, *pro se.*

*G. Ross Smith, P.A.,* for respondents.

STEELE HAYS, Justice. This original action was filed on
April 30, 1979, by petitioners, who are black, seeking
admission to the bar of Arkansas without the requirement of
an examination, and for the adoption of amendments to the
rules of the Supreme Court governing admission to the bar.
Petitioners are graduates of law schools accredited by the
American Bar Association and have taken the examination
of the State Board of Law Examiners at least twice, in some
instances three times, and have failed to achieve a passing
grade.

No evidence has been taken, consequently the only
record before us is a brief stipulation of facts giving the
name, age, law school and the dates and times each
petitioner (other than Mr. Booker) has taken the bar
examination. The stipulation recites that under Rule XII of
the Rules Governing Admission to the Bar of Arkansas
graduates of an accredited law school are not automatically

admitted to the bar but are required to take an examination. Petitioners' prayer for relief is that they be immediately instated as attorneys-at-law and solicitors in chancery without further qualification.

The original petition and supporting brief and argument allege a pattern and history of racial discrimination in Arkansas under segregation laws and practices. Petitioners all attended segregated grade schools and some attended black colleges. Three are graduates of the University of Arkansas School of Law, one a graduate of Howard University School of Law and one Lincoln University School of Law. Without attempting to repeat petitioners' lengthy recitation, it can be said their brief adverts to the more obvious evils prevalent under segregation.

Petitioners also allege deficiencies in the procedures of the bar examination and grading practices, citing much statistical data relative to the percentage of successes and failures by black applicants and the number of black lawyers in practice in ratio to black populations of Arkansas counties, et cetera. It would serve no useful purpose to attempt to summarize the assertions.

Four points are argued in petitioners' brief as grounds for the relief sought:

I

Petitioners should be admitted as attorneys-at-law and solicitors in chancery because of past and present racial discrimination by the State of Arkansas and the State Board of Law Examiners which are violative of petitioners' right to equal protection of the law.

II

Petitioners should be admitted as attorneys-at-law and solicitors in chancery because the State Board of Law Examiners and the rules of this court violate petitioners' right to due process of law.

III

Petitioners should be admitted as attorneys-at-law

and solicitors in chancery since Ark. Stat. Ann. §§ 25-103 (1962, Repl.) has not been repealed.

## IV

The court should use its powers under Amendment 28 and its inherent powers to insure equity in bar admission rules.

We need not consider the arguments originally presented, however, because Mr. Felix Taylor, spokesman for the petitioners, acknowledged in oral argument that during the three years this cause has been permitted to lie dormant, changes have occurred affecting the petitioners themselves and the relief sought. One petitioner is deceased, two are practicing elsewhere and one is no longer in Arkansas. Of the four points originally argued, Mr. Taylor asks only that we address the fourth, by directing the Board of Law Examiners to adopt procedures enabling an applicant to have access to the questions, his own answers and model answers. Similar procedures were ordered by the Alaska Supreme Court in *Application of Peterson,* 459 P.2d 703 (1969), so that a failing applicant would have some explanation and review wherein his answers were deficient. The Alaska Supreme Court stressed that procedures for review were essential to fair process and should be "as fully protected as these same occupational rights are when questions of moral character or discipline of the applicant are involved." The court held that minimum standards of basic procedural fairness required that the applicant have access to the examination, his answers and model answers of the particular examination.

While we are reluctant to order the State Board of Law Examiners unilaterally to incorporate a review process into its practices, we are agreed the proposal has sufficient merit to justify our requesting the Board to give serious consideration to the proposal. We recognize that there may be practical problems involved, but there are obvious benefits as well, certainly to those who fail, if not to all in the broad sense of fair play. For an applicant to muster and invest the resources of time and effort necessary to meet pre-law and law school requirements, to graduate from an accredited law

school, prepare for and undergo a rigorous bar examination, only to fail it, and again, and be told he is not entitled to know how he failed or why, only that he failed, has obvious shortcomings. The process offends a sense of fairness, at least viewed from the standpoint of the candidate whose career plans are shattered.

We reject the argument that such a step will inevitably lead to appeal — testing the sufficiency of the applicants' answers against the model. But even if it did, is that, too, not to be accorded as a minimum standard of basic procedural fairness? In *Schware* v. *Board of Bar Examiners,* 353 U.S. 232 (1957), the Supreme Court said:

> We need not enter into a discussion whether the practice of law is a "right" or "privilege." Regardless of how the State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons. Certainly the practice of law is not a matter of the State's grace. *Ex parte Garland,* (U.S.) 4 Wall. 33, 379, 18 L.Ed. 366 [370].

Speaking for the court in *Goldsmith* v. *United States Board of Tax Appeals,* 270 U.S. 117 (1926), dealing with the application of a certified public accountant to practice before the Board of Tax Appeals, Chief Justice Taft said:

> The rules adopted by the Board provide that "the board may in its discretion deny admission, suspend or disbar any person." But this must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process.

In conclusion, we invite the Board to weigh whether the simple expediency of requiring each examiner to prepare a model answer as he prepares his questions is not worth the modest effort required. If for the sake of anonymity the examiner is unwilling to meet with the few failing candidates who might request a conference, then the model

answers could at least be supplied to the secretary for dissemination to those who request them. On balance, our own view is that the added burden would be outweighed by the benefits inherent in a fairer, more open system.

For the reasons stated, the petitioners' request that we order the Board to adopt a review procedure is now denied.

GEORGE ROSE SMITH, HICKMAN and DUDLEY, JJ., concur.

DARRELL HICKMAN, Justice, concurring. I disagree that we should suggest the committee consider model answers. We should either require such a practice or not. I would not require it.

GEORGE ROSE SMITH, J., and DUDLEY, J., join in this concurrence.