**Jean R. MATSON, Appellant,**

v.

**STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.**

**No. S–2845.**

Supreme Court of Alaska.

Feb. 2, 1990.

---

Mary Alice McKeen, Juneau, for appellant.

G. Thomas Koester, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Jean Matson, a setnetter, was denied a limited entry permit for the Southeast Alaska drift gill net fishery ("gill net fishery") after the Board of Fish and Game closed the Southeast Alaska set net fishery ("set net fishery"). Matson challenged the Commercial Fisheries Entry Commission's ("Commission's") regulation under which his application was judged and appealed the Commission's denial of his permit. The superior court, Judge Rodger W. Pegues, upheld the regulation. We affirm in part, reverse in part, and remand for a hearing in accordance with this opinion.

### I.

In September 1971, while working as a logger, Matson was injured in an industrial accident. Following the accident, Matson rejected the State's offer of vocational retraining and "selected fishing as a vocation."

By the time he finished preparing to fish as a setnetter in 1972, there were but two openings left in the season, and the continuing effects of his injury prevented him from safely operating his own boat. He did fish in 1972, but only as a crewman on a gill net boat for one opening. Matson earned a total of $4,979 in 1972. All of this was derived from sources other than fishing.

In December 1972, the Board of Fish and Game eliminated the set net fishery.

In 1973, the Legislature enacted the Limited Entry Act ("Act"), AS 16.43, "to promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fisheries in Alaska by regulating and controlling entry into the commercial fisheries in the public interest and without unjust discrimination." AS 16.43.010. In order to fulfill this purpose, the Act created the Commission. AS 16.43.100(a).

In 1974, the Commission designated the gill net fishery a "distressed fishery" under the Act. 20 AAC 5.300. Because the Board of Fish and Game closed the separate set net fishery in 1972, the Commission promulgated an emergency regulation pursuant to AS 44.62.250 on April 7, 1975, consolidating the two fisheries. This regulation allowed Southeast Alaska setnetters to apply for gill net entry permits based upon their participation as setnetters. The Commission would judge all applications for entry into the gill net fishery by the same criteria. See 20 AAC 05.300.

Applications are judged on a point system. Points are awarded on the basis of such criteria as past participation and dependence upon income from fishing. 20 AAC 5.600. Under Commission regulations, twenty points are required to be included in the class of those "who would suffer significant economic hardship by exclusion from the fishery" and are thus entitled to a gill net entry permit under AS 16.43.270(a). 20 AAC 05.640(a). Matson applied for a permit, claiming twenty-one points.

After a review by the Commission's staff and a hearing, the Commission verified eighteen of the points Matson claimed.[1] Matson received three income dependence points, indicating fifty percent dependence upon income from fishing, rather than the six points claimed which require ninety percent income dependence. The hearing officer denied Matson's claim for an additional three points for 1972 income dependence on the ground that he earned $4,979 in nonfishing income, and it would be unreasonable to conclude that he would have earned nine times that amount in the set net fishery if he had actually fished.

Matson appealed the Commission's decision to the superior court. The parties stipulated to a stay of the briefing schedule to allow Matson to challenge the hearing officer's rationale before the Commission. It was contemplated that if the Commission still denied Matson's application, it would be allowed to supplement the record on appeal with an explanation of its decision. The Commission abandoned the hearing officer's original reasoning, but still concluded that there was ample evidence to support a finding that Matson would have been less than ninety percent dependent on income from fishing if he had fished in 1972. The Commission assumed that Matson would have earned $3,600 from fishing, the estimated average earnings of the seven Southeast Alaska setnetters. For Matson to have received ninety percent of his total income from the fishery under this assumption, he would have had to earn no more than $400 in income from sources other than fishing. The Commission found that he actually earned at least $853.89 after the end of the fishing season. The Commission thus reasoned that at best Matson would have been only eighty-one percent dependent upon income from fishing in 1972. The superior court supplemented the record with this new rationale.

The superior court concluded that "Matson has not shown that it was arbitrary or unreasonable for [the Commission] to adopt the ninety percent requirement and to conclude that he was not ninety percent reliant

---

1. Since Matson did not actually participate as a setnetter in 1972, he received points under 20 AAC 05.630(a)(5), which allows points for participation to be awarded where "unavoidable circumstances exist such that an applicant's past participation in the fishery is not realistically reflected by points awarded for [actual] past participation...." Matson received income dependence points under 20 AAC 05.630(b)(2), which authorizes an award of points "if special circumstances exist such that an applicant's income dependence is not realistically reflected by his [actual] income dependence percentage...."

on fishing in 1972." The superior court affirmed the Commission's decision and Matson appeals.

## II.

Matson argues that the requirement that setnetters applying for permits to enter the gill net fishery be ninety percent dependent upon income from fishing in 1972 to receive full income dependence points is arbitrary and unreasonable, and thus denies equal protection. Since a regulation is invalid if it is arbitrary or unreasonable, the equal protection question is reserved until Part III.

The Limited Entry Act gives the Commission broad powers to regulate entry into fisheries by regulation. *E.g.,* AS 16.-43.100(a)(6) (power to "establish qualifications for the issuance of entry permits"); AS 16.43.250(b) (power to determine "priority classifications of applicants who would suffer significant economic hardship by exclusion from [a] fishery"). When the Commission adopts regulations under these statutory grants of authority, it acts in a quasi-legislative capacity, and the resulting regulations are "legislative regulations." *Kelly v. Zamarello,* 486 P.2d 906, 909 (Alaska 1971).

In *Kelly,* we discussed the review of legislative regulations in detail. 486 P.2d at 909–11. We prescribed a two-step scheme for reviewing administrative regulations adopted in accordance with the Administrative Procedure Act, AS 44.62, when the legislature intended to commit the subject of the regulation to agency discretion. Under *Kelly,* we first determine "whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency." 486 P.2d at 911; *see* AS 44.62.030. We then determine "whether the regulation is reasonable and not arbitrary." 486 P.2d at 911.

In *Kelly,* we had little difficulty finding regulations governing the procedures for accepting oil lease bids consistent with and reasonably necessary to the purposes of the statute under which the regulations were promulgated. 486 P.2d at 912. The Commission has substantial latitude to promulgate regulations governing the qualifications for entry permits. We cannot say that the Commission's decision to require ninety percent income dependence to receive full income dependence points for 1972, rather than eighty or even seventy percent, is inconsistent with or unnecessary to the purpose of the Limited Entry Act to conserve the fishery resource by limiting entry while preventing unjust discrimination among applicants for permits.

Matson argues that the use of a unitary income dependence standard violates the purpose of "regulating and controlling entry ... without unjust discrimination." AS 16.43.010. In *Commercial Fisheries Entry Commission v. Apokedak,* 606 P.2d 1255 (Alaska 1980), we noted that the loss suffered by exclusion from the fishery is a consideration in determining unjust discrimination. 606 P.2d at 1266. We then held that a regulation limiting applicants to past license holders "furthers the legislative purpose of preventing unjust discrimination because it seeks to protect those having the most to lose by exclusion from the fishery."[2] 606 P.2d at 1268. The same is true of the regulation at issue here. The regulation protects those who are most dependent upon income from fishing. Since Matson was applying for a gill net entry permit on the basis of his record as a setnetter, it might be arbitrary or unreasonable to hold him to the ninety percent standard applied to gillnetters, but it cannot otherwise discriminate unjustly.

Whether the regulation is arbitrary or unreasonable is a more difficult determination. Set net fishing is not as profitable as drift gill net fishing. Setnetters thus may be more likely to seek other forms of employment during the off season than gill-

---

2. While we made this determination in the course of reviewing the challenged regulation under the equal protection clause of the Alaska Constitution, our discussion of the legislative purposes of the Act is equally applicable to this analysis under the Administrative Procedure Act.

netters. Matson alleges that when the Commission responded to the closure of the set net fishery by allowing setnetters to apply for gill net permits, it did so without considering whether the same income dependence standards should apply and without the careful consideration of empirical data that accompanied the formulation of other income dependence requirements. It appears that the Commission did *not* evaluate data on the setnetters' incomes before determining that they should be required to qualify as gillnetters on the same terms as present gillnetters.

Although the Commission did not consider empirical data, it did not act unreasonably. When the Board of Fish and Game closed the set net fishery, the Commission accommodated the displaced setnetters by permitting them to enter the gill net fishery on the basis of their participation in the set net fishery. The Commission argues that in order to allocate a limited number of permits among all applicants for drift gill net licenses, the same standard of income dependence must be applied to all applicants. Matson concedes that the ninety percent standard was properly applied to gillnetters. A setnetter who routinely accepted employment outside fishing would endure less hardship from exclusion from the gill net fishery than a gillnetter who was almost completely dependent upon income from fishing.

■ The Commission had a duty to consider its regulation before promulgating it and to produce a final regulation that is reasonable. Because the setnetters were applying to enter the gill net fishery, it was reasonable to use a unitary standard to prevent unjust discrimination against gillnetters who were more dependent upon fishing than setnetters. We hold that it was reasonable for the Commission to judge all applicants by the same test of hardship.

### III.

■ Regulations alleged to deny equal protection under the United States Constitution are subject to strict scrutiny when they involve a suspect classification or a fundamental right. *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1261 (Alaska 1980). The Limited Entry Act does not involve a suspect classification, and the availability of employment is not a fundamental right requiring strict scrutiny under the U.S. Constitution. 606 P.2d at 1262. In cases involving permit denials due to alleged defects in the Limited Entry Act or regulations promulgated under the Act, the proper standard of review is the rational basis test. 606 P.2d at 1262. For the reasons given above, we find the application of the ninety percent income requirement to both setnetters and gillnetters applying for permits to enter the gill net fishery rationally related to the purpose of the income dependence standard.

Equal protection analysis under the Alaska constitution is somewhat more complex. We adopted a sliding scale approach to equal protection questions in *State v. Erickson*, 574 P.2d 1, 12 (Alaska 1978). We refined this approach in *State v. Ostrosky*, 667 P.2d 1184, 1192–93 (Alaska 1983) and *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269–70 (Alaska 1984). A plurality of the court correctly summarized this approach in *State v. Enserch Alaska Construction, Inc.*, 787 P.2d 624 (Alaska 1989):

> [W]e first determine the importance of the individual interest impaired by the challenged enactment. We then examine the importance of the state interest underlying the enactment, that is, the purpose of the enactment. Depending upon the importance of the individual interest, the equal protection clause requires that the state's interest fall somewhere on a continuum from mere legitimacy to a compelling interest. Finally, we examine the nexus between the state interest and the state's means of achieving that interest. Again depending upon the importance of the individual interest, the equal protection clause requires that the nexus fall somewhere on a continuum from substantial relationship to least restrictive means.

*Enserch*, at 631–632.

In *Rose v. Commercial Fisheries Entry Commission*, 647 P.2d 154 (Alaska 1982),

we faced an equal protection challenge to other provisions of the emergency regulation at issue in the present case. There, we identified "prevent[ing] unjust discrimination by allocating permits according to the degree of hardship which a person would suffer by exclusion from the fishery" as a legitimate purpose of the Act. 647 P.2d at 159 (quoting *Apokedak*, 606 P.2d at 1266). We concluded that since the regulation was fairly and substantially related to the legitimate purposes of the Act, the regulation did not deny equal protection. *Id.* Although this analysis leads directly to the conclusion that the present regulation is valid, we choose to explore this question in greater depth and apply the full equal protection analysis required by our other prior cases.

 The right to engage in economic endeavor, which includes the right to employment, is an important right. *Enserch*, at 632; *Apokedak*, 606 P.2d at 1266. As such, we will closely scrutinize enactments that interfere with that right. *Enserch*, at 633; *Patrick v. Lynden Transp., Inc.*, 765 P.2d 1375, 1379 (Alaska 1988). Equal protection requires that an enactment impairing this important right be closely related to an important state interest. *Enserch*, at 632.

Two purposes of the questioned regulation are to accommodate setnetters within a regulatory scheme that no longer includes their fishery and to avoid unjust discrimination against any fisherman. The state clearly has an important interest in accommodating displaced setnetters in the regulatory regime. Failure to do so would leave setnetters wholly without an opportunity to fish. Since Matson is only allowed to apply for a permit under the challenged regulation, he cannot dispute this. The state's interest in preventing unjust discrimination is unquestionably important.

Allowing setnetters to apply for gill net entry permits is closely related to the purpose of accommodating them within the regulatory regime, even though they might have been allowed to participate on different terms.

We must also determine whether the application of a unitary income dependence test to both setnetters and gillnetters applying for gill net entry permits is closely related to the state's interest in avoiding unjust discrimination. *See Apokedak*, 606 P.2d at 1266. Matson argues that a high unitary standard discriminates against setnetters who had low incomes from fishing and regularly sought employment outside fishing. The Commission responds that any standard but a unitary standard would discriminate against gillnetters who, as a group, tend to earn most of their income from fishing, and would thus endure a greater hardship if excluded from the fishery.

In *Younker v. Alaska Commercial Fisheries Entry Commission*, 598 P.2d 917 (Alaska 1979) we noted that:

> It would seem axiomatic that an applicant with a higher income dependence percentage has a greater degree of dependence on the fishery for income, and would therefore tend to suffer greater hardship by exclusion than would an applicant with a lower income dependence percentage, who has a greater reliance on alternative occupations and is less dependent on the fishery.

598 P.2d at 922. We then upheld the Commission's point scheme over a challenge that it discriminates against those who work at other jobs in addition to fishing. *Id.*

 Both the setnetters and gillnetters were competing for a limited number of entry permits in one fishery. Gillnetters highly dependent upon income from fishing would experience relatively more hardship by virtue of exclusion than setnetters who were less dependent upon income from fishing. The challenged regulation is closely related to "the legislative purpose of preventing unjust discrimination because it seeks to protect those having the most to lose by exclusion from the fishery." *Apokedak*, 606 P.2d at 1268. Because the challenged regulation is closely related to an important state interest, it does not deny equal protection under the Alaska Constitution.

## IV.

The Commission was allowed to supplement the record in the superior court with a new rationale for its refusal to award Matson full income dependence points for 1972. This rationale incorporates several assumptions, namely, that Southeast Alaska setnetters earned an average of $3,600 from fishing in 1972, that Matson would have earned no more than the average if he had fished, and that Matson would have earned at least $853.89 in income from sources other than fishing even if he had fished in 1972. The Commission has never presented the basis for these assumptions at a hearing on the record and Matson has not had an opportunity to challenge them. We now consider whether this procedure of adopting the new rationale denied Matson due process of law. For the due process clause to apply, there must be "the deprivation of an individual interest of sufficient importance to warrant constitutional protection." *Nichols v. Eckert*, 504 P.2d 1359, 1362 (Alaska 1973).

In *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), the Supreme Court noted that a state-created right may in some circumstances constitute a sufficient entitlement to trigger the right to procedures under the due process clause. 452 U.S. at 463, 101 S.Ct. at 2463. In *Dumschat*, the Court denied a prisoner's claim that he had a due process right to a written statement of the State Board of Pardons' reasons for denying his request for commutation of his sentence on the ground that the prisoner had no state-created right other than the right to seek commutation. 452 U.S. at 467, 101 S.Ct. at 2465. The Court observed that the Board's decision whether to commute a sentence involved subjective evaluation and predictions of future behavior rather than objective factfinding. 452 U.S. at 464, 101 S.Ct. at 2464. The Court observed that "[t]he ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority...." 452 U.S. at 465, 101 S.Ct. at 2465.

■ The Limited Entry Act and the Commission's own regulations conferred upon Matson a right to seek a limited entry permit and to have his permit judged by the objective criteria of the Commission's point system. The determination whether Matson would have been ninety percent dependent upon income from fishing if he had fished in 1972 is, of course, to some extent subjective. However, the application of the Commission's criteria is sufficiently objective that we hold that Matson's right to have his application judged under those criteria implicates due process considerations under both the state and federal constitutions.

■ Due process requires the "opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (citations omitted). The purpose of this requirement is to allow "the aggrieved party the opportunity to present his case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). Because the Commission adopted its new rationale and supplemented the record in the superior court with that rationale in an unorthodox manner that denied Matson an opportunity to present his case and have its merits judged, we hold that Matson is entitled to a hearing on the limited question whether he would have been ninety percent dependent upon income from fishing if he had fished in 1972. At that hearing, the Commission may present its rationale and the factual basis for that rationale and Matson may challenge them and produce other evidence of what his 1972 income dependence would have been if he had fished.

The decision of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.