Horace FIELDS, Appellant,

v.

John D. KELLY, a member of the North Dakota State Bar Board in both his individual and official capacities; Malcolm H. Brown, a member of the North Dakota State Bar Board, in both his individual and official capacities; Gerald D. Galloway, a member of the North Dakota State Bar Board, in both his individual and official capacities;

North Dakota State Bar Board, and for the purposes of the injunctive relief sought herein, an administrative agency of the State of North Dakota, established by an Act of the North Dakota Legislative Assembly, Appellees.

No. 92–1346.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Feb. 17, 1993.

David C. Thompson, Fargo, ND, for appellant.

James S. Hill, Bismarck, ND, for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Horace Fields, who failed the North Dakota bar examination, sued the North Dakota Bar Board and its members under 42 U.S.C. § 1983 (1988) for deprivation of property without due process. The district court[1] dismissed the complaint and Fields appeals. He argues first that he presented a material issue of fact as to whether the Bar Board raised the passing score for an improper reason, and second that the Bar Board denied him due process and equal protection by not permitting him free access to the Multistate Bar Examination

questions and answers. We affirm the judgment of the district court.

Having already failed the Virginia bar six times, Horace Fields, a 1971 Howard University School of Law graduate, sat for the North Dakota bar in July 1987. The North Dakota bar examination consisted of a six question essay examination and the Multistate Bar Examination, which is a 200 question multiple choice test used by most states. National Conference of Bar Examiners, The Bar Examiners' Handbook 30:1, 30:401 (Stuart Duhl ed., 3d ed. 1991). The essay and multiple choice portions are scaled so the two scores can be averaged. To pass the examination an applicant must achieve an average score of 130. Fields received a scaled score of 88 on the essay section and 88 on the Multistate section. His average score, obviously, was 88. Fields' Multistate score was the second lowest ever recorded in North Dakota and his essay score was the lowest since 1984.

The North Dakota Bar Board notified Fields that he had failed the examination and that it would recommend to the North Dakota Supreme Court that Fields not be admitted to the bar. Fields requested that his Multistate be hand scored; this procedure did not alter his score. Pursuant to Rule 6 of the North Dakota Admission to Practice Rules, Fields requested review of the Board's negative recommendation, and the Board set a hearing date. By telephone Fields requested a continuance of the hearing, which the Board denied; the Board proceeded in its review without Fields in attendance, and confirmed its original negative recommendation. Fields did not appeal to the North Dakota Supreme Court, as he was entitled to do under Rule 6(C),[2] but permitted the time for appeal to expire.

As part of the Bar Board review procedure under Rule 6, Fields was provided

* The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Patrick A. Conmy, Chief United States District Judge for the District of North Dakota.

2. North Dakota Admission to Practice Rule 6(C)(1) provides:

An applicant who, after formal hearing, receives notice that the State Bar Board will recommend against admission or has given a negative decision on licensure may request review of that recommendation or decision by the Supreme Court. The review may be requested by written petition directed to the Clerk. The petition must be filed within 30

with copies of the North Dakota essay questions, model answers, and copies of his own answers. Rule 6 did not provide for review of the Multistate. After time for appeal of the Board's decision had expired, Fields requested access to the Multistate examination and his answers. The Bar Board at first refused to grant Fields any access because he had no appeal proceeding pending, but after Fields' counsel argued the issue at a meeting of the Board, the Board granted permission for Fields or his counsel to review the examination papers under the guidelines established by the National Conference of Bar Examiners, that is, under supervision and without taking notes.

Fields then brought this suit against the Board and its members, alleging that the Bar Board denied him due process and equal protection in raising the minimum passing score and in refusing greater access to the Multistate test and answers.

The district court announced its intent to dismiss on the grounds that, since Fields had not appealed to the North Dakota Supreme Court, the case was unripe, as in *Feldman v. State Board of Law Examiners*, 438 F.2d 699 (8th Cir.1971) *Fields v. Kelly*, No. A1–91–012 (D.N.D. Oct. 28, 1991). The court granted Fields' motion for reconsideration, but dismissed the case on January 8, 1992.

■ We affirm on different grounds, since our examination of North Dakota Admission to Practice Rule 6 convinces us that, though Fields failed to appeal to the North Dakota Supreme Court, action on his application became final when he permitted the time for appeal to expire. This procedural point distinguishes Fields' case from *Feldman*, in which we concluded that we lacked jurisdiction because there had been no final decision on Feldman's application. 438 F.2d at 702–03.

## I.

■ Fields' first argument is that the Bar Board denied him due process because

it raised the minimum passing score, not for the legitimate reason of testing for competence, but for the illegitimate reason of keeping out-of-state applicants out of the North Dakota Bar. We need not delve into this issue, since the Board only raised the passing score from 125 to 130. Fields' score of 88 would have failed under either standard, and therefore Fields was not harmed by the Board's action, regardless of its motive.

## II.

■ Second, Fields argues that he was deprived of property rights without due process when the Bar Board denied him access to the Multistate examination and answers and that he was denied equal protection of the laws, because permitting unregulated review of the essay portion and not of the Multistate creates an irrational distinction.

We easily answer Fields' equal protection argument by pointing out that the reason for limiting access to the Multistate is that some of the same questions appear in following years. Bar Examiner's Handbook at 30:103. Therefore, questions must be kept secret in order to preserve the fairness of the test for later applicants. This is a rational basis for deciding not to make the examination public. *See Jones v. Board of Com'rs*, 737 F.2d 996, 1000–01 (11th Cir.1984) (applying rational basis review to restrictions on right to practice law).

■ Fields' due process argument varies from the usual argument of the disappointed bar applicant; many such applicants have argued that they were deprived of the right to practice law and that review of their examination papers was part of the process to which they were entitled before the State took away their right.[3] Instead, Fields argues that inspection is itself a property right. He asserts that under North Dakota law, specifically North Dakota Constitution Article XI, section 6, and

days after the Board's mailing of the notice of the results of the formal hearing.

**3.** A number of federal courts have rejected this argument on the grounds that a state gives the

applicant due process by permitting him to sit for the examination again. *E.g., Jones*, 737 F.2d at 1002–03; *Lucero v. Ogden*, 718 F.2d 355 (10th Cir.1983), *cert. denied*, 465 U.S. 1035, 104 S.Ct.

North Dakota Century Code § 44-04-18 (1978), he has a right to inspect "public records," that his Multistate examination and answers are such records, and that by refusing to let him inspect the records the Bar Board deprived him of his state law right without due process.

The record demonstrates that Fields received ample process. Minutes of the North Dakota Bar Board reflect that Fields' request to inspect his Multistate examination was presented to the Board on April 12, 1989. Counsel appeared before the Board on June 15, 1989 to argue the inspection issue. The Board then gave Mr. Fields the opportunity to review the examination under supervision and without taking notes. Mr. Fields thus received a hearing at the administrative level. North Dakota case law also shows that state courts can grant a writ of mandamus to remedy violations of the North Dakota open records laws, *see Forum Public Co. v. City of Fargo*, 391 N.W.2d 169 (N.D.1986), an option which Fields did not pursue. Fields received a predeprivation hearing and had a fully adequate postdeprivation remedy available. He cites no authority indicating that this is inadequate process.

We affirm the judgment of the district court.

1308, 79 L.Ed.2d 706 (1984); *Whitfield v. Illinois Bd. of Law Examiners*, 504 F.2d 474, 478 (7th Cir.1974) (per curiam); *cf. Brewer v. Wegmann*, 691 F.2d 216 (5th Cir.1982) (per curiam) (no right of access to examination papers that were destroyed), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983); *Parrish v. Board of Com'rs*, 533 F.2d 942 (5th Cir.1976) (finding right to disclosure of examination papers not as matter of due process, but as discovery on equal protection claims). *But see Richardson v. McFadden*, 540 F.2d 744, 752 (4th Cir.1976), *on rehearing en banc*, 563 F.2d 1130 (4th Cir.1977) (per curiam), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978). *See generally Tyler v. Vickery*, 517 F.2d 1089, 1104–05 (5th Cir. 1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); David P. Chapus, Annotation, *Failed Applicant's Right of Access to Bar Examination Questions and Answers*, 57 A.L.R.4th 1212 (1987); Michael S. Davis, Comment, *Review of Failing Bar Examinations: Does Reexamination Satisfy Due Process?*, 52 Boston U.L.Rev. 286 (1972).

Fields cites state court cases permitting applicants to review their examinations: *In re Peterson*, 459 P.2d 703 (Alaska 1969); *In re Obermeyer*, 717 P.2d 382, 390 (Alaska 1986), *abrogated on other grounds, In re Bettine*, 840 P.2d 994 (Alaska 1992); *Taylor v. Safly*, 276 Ark. 541, 637 S.W.2d 578 (1982) (suggesting administrative body permit review). If by citing these cases he means to argue that review of the Multistate is necessarily part of the process due an applicant, we reject the argument for the reasons stated by the Circuit Courts we have cited above. The state court cases Fields cites are inapposite, since those courts were discharging their duties to supervise the admission process, not interpreting the due process clause of the United States Constitution. *E.g., Peterson*, 459 P.2d at 709; *see* Davis, *supra* at 290.