JOHN J. SCINTO *v.* R. DAVID STAMM ET AL.
(14538)

CALLAHAN, BORDEN, BERDON, SANTANIELLO and F. X. HENNESSY, Js.

*(One justice dissenting)*

Argued November 5, 1992—decision released February 9, 1993

*John J. Scinto,* pro se, the appellant (plaintiff).

*Carolyn K. Querijero,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellees (defendants).

BORDEN, J. The principal issues in this appeal are: (1) whether the grading procedures of the Connecticut bar examining committee are arbitrary and capricious and therefore violate due process of law; and (2) whether a bar applicant who receives a failing score on the bar examination is constitutionally entitled to a judicial hearing for the purpose of regrading the applicant's answers on the essay portion of the examination. The plaintiff, John J. Scinto, appeals from the judgment of the trial court denying his motion for summary judgment and granting the motion for summary judgment of the defendants, the Connecticut bar examining committee, and R. David Stamm, its administrative director.[1] We affirm the judgment of the trial court.

The relevant facts and procedural history are as follows. In July, 1989, the plaintiff took the Connecticut bar examination and received a failing score of 262.79,

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

which was below the standard passing score of 264.[2] The defendant then took the February, 1990 bar examination but again failed, receiving a score of 260.67. The plaintiff thereafter filed this petition in Superior Court seeking, inter alia: (1) a judicial hearing for the purpose of regrading his essay answers for the July, 1989 bar examination; (2) an injunction ordering the defendants to admit him to the Connecticut bar; and (3) a declaratory judgment that the defendants' regulations governing admission to the bar are invalid because they violate the due process clauses of the federal and state constitutions.

The defendants moved to dismiss the plaintiff's petition on the grounds that the court lacked subject matter jurisdiction because: (1) the doctrine of sovereign immunity barred the plaintiff's claims; and (2) the plaintiff's request for a declaratory judgment did not comply with Practice Book § 390 (d)[3] since proper notice had not been given to other interested parties. While this motion was pending, the plaintiff moved for permission to amend his petition by adding a claim arising out of his failure to pass the February, 1990 bar examination. The defendants opposed the motion to amend, but later agreed to withdraw their objection on the condition that the pending motion to dismiss would be made applicable to the claim arising out of the February, 1990 examination.

The trial court, *Thim, J.*, subsequently denied the defendants' motion to dismiss, ruling that the doctrine of sovereign immunity did not bar the plaintiff's claims

---

[2] The defendant had failed the exam on at least two occasions prior to the July, 1989 exam. He does not contest, however, the procedures for grading his examinations on the occasions prior to the July, 1989 examination.

[3] Practice Book § 390 provides in relevant part: "The court will not render declaratory judgments upon the complaint of any person . . . (d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

and that the court had subject matter jurisdiction over the declaratory judgment claim because the plaintiff, pursuant to *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 528, 290 A.2d 327 (1971), was entitled to cure the lack of notice prior to a final judgment. The defendants then filed an answer to the plaintiff's petition denying all of the plaintiff's claims.[4] The defendants also asserted, by way of special defense, that the doctrine of sovereign immunity barred the action because "the allegations of the complaint do not clearly demonstrate an incursion upon constitutionally protected interests." The plaintiff then moved to strike the defendants' special defense, and subsequently the trial court, *Thim J.,* denied the motion.

Both sides moved for summary judgment. The trial court, *McGrath, J.,* denied the plaintiff's motion for summary judgment and granted the defendants' motion for summary judgment. The trial court concluded that: (1) the grading procedures employed by the defendants were not arbitrary or capricious and therefore do not violate due process; (2) the plaintiff was not constitutionally entitled to a judicial hearing for the purpose of regrading his answers to the essay portion of the bar examination; and (3) the trial court lacked subject matter jurisdiction over the declaratory judgment aspect of the plaintiff's claim because the

[4] The plaintiff claims that, because the defendants' answer does not deny his allegations that he passed the February, 1990 bar examination, he was entitled to summary judgment on that claim. Although the trial court did not address this issue in its memorandum of decision on the motions for summary judgment, the plaintiff's claim is without merit.

The plaintiff never filed an amended petition to include the February, 1990 bar examination. Consequently, when the defendants filed their answer to the plaintiff's petition, they responded to all of the allegations contained in the petition. That petition asserted claims related to the July, 1989 examination only and, therefore, the defendants could not have answered a claim regarding the February, 1990 examination that was not included in that petition.

plaintiff had not attempted to notify any interested parties pursuant to the requirements of Practice Book § 390 (d). On appeal, the plaintiff claims that the trial court improperly: (1) concluded that the grading procedures of the defendants are not arbitrary and capricious and therefore do not violate due process; (2) concluded that he was not constitutionally entitled to a judicial hearing for the purposes of regrading his answers to the essay portion of the examination; and (3) denied his motion to strike the defendants' special defense.[5]

I

The plaintiff first claims that the trial court improperly denied his motion for summary judgment and improperly granted the defendants' motion for summary judgment because the grading procedures of the defendants are arbitrary and capricious and therefore violate his due process rights. We disagree.

In July, 1982, after several years of consultation with nationally recognized bar examination experts, the defendants extensively revised the format of the Connecticut bar examination. As revised, the examination consists of two parts: a multiple choice portion, administered in most states and known as the Multistate Bar Examination (multistate), consisting of two hundred questions;[6] and an essay portion consisting of twelve

[5] The plaintiff also appears to claim in his reply brief that the trial court improperly concluded that it lacked subject matter jurisdiction over the plaintiff's declaratory judgment claim. Absent exceptional circumstances, we will not review claims raised for the first time in an appellant's reply brief. See *Adolphson* v. *Zoning Board of Appeals*, 205 Conn. 703, 716, 535 A.2d 799 (1988); *Clark* v. *Gibbs*, 184 Conn. 410, 420, 439 A.2d 1060 (1981). An appellant's failure to raise a claim until its reply brief does not give the appellee a proper opportunity to respond. *DeLucia* v. *Burns*, 11 Conn. App. 439, 444, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987). We therefore conclude that this issue is not properly before this court.

[6] The answers to the multistate are scored by computer. The raw score equals the number of questions answered correctly out of the two hundred

questions. The examination as a whole is designed to test the minimal competency of a candidate to practice law in Connecticut. The present system was designed to standardize passing scores, provide for consistency in grading and to protect against idiosyncratic grading and grading errors. There is no passing or failing score on either portion of the examination.

Grading of the essay answers is done so that the graders do not know the identity of the applicant whose answers they grade. Answers to the essay questions are graded on a scale from zero to seven. In most instances, all of the examination booklets containing the answer to one of the twelve questions are distributed among three graders.[7] Each grader assigns a score to one third of the answer booklets. In order to ensure uniformity and consistency in grading essay answers, the three graders for a particular question meet, prior to grading the essay questions, to develop a model answer and to agree upon the weight to be assigned to each component of the answers.

A candidate's multistate score is added to the candidate's converted score[8] on the essay portion of the

questions. The Multistate Bar Examining Committee then scales the raw score to compensate for any degree of difficulty of the test in comparison to prior administrations of the multistate in previous years. The defendants use the multistate scaled score in calculating an applicant's total score for the Connecticut bar examination.

[7] The Connecticut bar examination is administered twice a year: once in February and once in July. Because the number of candidates that sit for the February examination is significantly lower than the number that sit in July, the defendants sometimes assign only two graders to a particular essay question on the February examination.

[8] The defendants use a complex mathematical formula to convert the essay scores to the multistate scale. The formula is as follows:

$SS = Xb + Sb/Sa\ (Rs - Xa)$ where
$SS$ = Essay examination score on the multistate scale.
$Xb$ = Average Connecticut applicant's multistate score.
$Sb$ = Standard deviation of Connecticut applicant's multistate score.
$Sa$ = Standard deviation of essay portion raw scores.
$Rs$ = Applicant's essay portion raw score.
$Xa$ = Average essay portion raw score.

examination to determine the total score. To pass the examination a candidate must attain a total score of 264. If a candidate's total score is within ten points, plus or minus, of the passing score, the essay portion of the examination is regraded by a different grader. If this second grader assigns the same score as the previous grader for a particular question, then that score becomes the final score for that question. If the scores of the two graders differ by only one point, then the two scores are averaged. If the two scores differ by more than one point, then the two graders read the answer for a third time and agree upon the final score for that question. If a candidate's score after this process is 264 or greater, then the candidate has passed the examination, and conversely, a candidate receiving a score below 264 has failed the examination. There is no limitation on the number of times a candidate who has received a failing score may retake the examination.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Practice Book §§ 380, 381; *Burns* v. *Hartford Hospital*, [192 Conn. 451, 455, 472 A.2d 1257 (1984)]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. *Town*

*Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978). *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). . . ." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* 219 Conn. 772, 780–81, 595 A.2d 334 (1991).

In light of the similarity of issues raised in the two motions for summary judgment, we consider the trial court's disposition of the motions together. The plaintiff, in support of his motion for summary judgment and in opposition to the defendants' motion for summary judgment, filed memoranda, copies of the essay examination questions and his answers, and a personal affidavit. The substance of these documents can be distilled into two particular claims: (1) that his essay answers were scored by impermissibly subjective grading standards that resulted in gross grading errors; and (2) that because he received a score that was close to a passing score, there is no substantial difference between his failing score and a passing score, and thus the defendants arbitrarily and capriciously concluded that he was not minimally competent to practice law in Connecticut.

The United States Supreme Court's decision in *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957), established the appropriate standard by which to analyze the plaintiff's claim. "A State cannot exclude a person from the practice of law . . . in a manner or for reasons that contravene the Due Process . . . Clause of the Fourteenth Amendment. . . . A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a *rational connection* with the applicant's fitness or capacity to practice law." (Emphasis added.) Id.; *Scott* v. *State Bar Examining Committee,* 220 Conn. 812, 820, 601 A.2d 1021 (1992).

The plaintiff, pursuant to his motion for summary judgment, had the heavy burden of establishing that the grading procedures employed by the defendants are arbitrary and capricious, and that they have no rational connection to achieving the legitimate state interest of requiring minimal competency to practice law. See, e.g., *Tofano* v. *Supreme Court of Nevada,* 718 F.2d 313, 315 (9th Cir. 1983); *Tyler* v. *Vickery,* 517 F.2d 1089, 1101 (5th Cir. 1975), reh. denied, 521 F.2d 815 (5th Cir.), cert. denied, 426 U.S. 940, 96 S. Ct. 2660, 49 L. Ed. 2d 393 (1976); *Chaney* v. *State Bar of California,* 386 F.2d 962, 964 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S. Ct. 1262, 20 L. Ed. 2d 162 (1968); *McGinn* v. *State Bar Board of North Dakota,* 399 N.W.2d 864, 867 (N.D. 1987); *Petition of Wayland,* 510 P.2d 1385, 1387 (Okla. 1973). Courts have uniformly held that an examination consisting of essays is not overly subjective, and is a rational method of assessing a candidate's competency to practice law. See, e.g., *Tofano* v. *Supreme Court of Nevada,* supra; *McGinn* v. *State Bar Board of North Dakota,* supra; *Dinger* v. *State Bar Board of North Dakota,* 312 N.W.2d 15, 18 (N.D. 1981). Likewise, a state is entitled to establish a minimum score for passing a bar examination without offending due process. *In re Fischer,* 425 A.2d 601, 602 (Del. 1980); *Petition of Pacheco,* 85 N.M. 600, 604, 514 P.2d 1297 (1973); *Dinger* v. *State Bar Board of North Dakota,* supra; see also *Bailey* v. *Board of Law Examiners of Texas,* 508 F. Sup. 106, 108 (W.D. Tex. 1980).

The trial court concluded that "[t]he plaintiff has not submitted any evidence to support his allegations that the [defendants'] procedures resulted in gross grading errors. Further, the plaintiff submits no evidence to rebut the [defendants'] affidavit." We agree. Nowhere in his supporting documentation does the plaintiff offer anything but his own opinion and conclusions, based primarily on unsworn factual assertions—contained not

in his affidavit, but in his accompanying memoranda, that the grading procedures used by the defendants were unfair. Unsworn assertions of fact, summary conclusions of law and unsupported allegations in an affidavit do not entitle a party to a summary judgment. See, e.g., *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 12, 459 A.2d 115 (1983); *Rathkopf* v. *Pearson*, 148 Conn. 260, 264, 170 A.2d 135 (1961) ("[a]n allegation setting forth no evidentiary facts avails nothing").

The plaintiff failed to offer evidence that setting the passing score at 264 is arbitrary or capricious. The defendants' affidavit in support of their motion for summary judgment, moreover, stated that they arrived at the passing score only after extensive consultation with testing experts. Similarly, the plaintiff, instead of offering evidence that the defendants' system of grading somehow does not conform to accepted and sound nationwide methods of scoring bar examinations, offered only his opinion that his answers to several of the essay questions should have received higher scores.

The defendants' extensive affidavit meticulously described the current format of the bar examination, its procedural safeguards and its provision for multiple review of examinations falling within ten points of the passing score. The affidavit set forth a carefully crafted system that is, in fact, designed to reduce the likelihood of any capricious or idiosyncratic scoring by an individual grader. Each answer is compared to the model answer created by three graders at a calibration session, and an answer may be read up to two additional times if the answer is part of an examination whose score falls within ten points of the passing score, and if there is any disagreement as to the proper score for that answer.

According to the undisputed contention of the defendants, this system is "state of the art" and is currently in use in most states. Courts have uniformly upheld

grading systems such as the defendants' that offer multiple protections from arbitrary grading. See, e.g., *Tyler* v. *Vickery,* supra, 1105; *Singleton* v. *Louisiana State Bar Assn.,* 413 F. Sup. 1092, 1099–1100 (E.D. La. 1976); *In re Application of Bettine,* 840 P.2d 994, 997 (Alaska 1992); *Mississippi Board of Bar Admissions* v. *Applicant F.,* 582 So. 2d 377, 384 (Miss.), cert. denied sub nom. *Zebert* v. *Mississippi Board of Bar Admissions,* U.S. , 112 S. Ct. 591, 116 L. Ed. 2d 616 (1991); *Loeb* v. *New York State Bar Board of Law Examiners,* 144 App. Div. 2d 813, 534 N.Y.S.2d 559 (1988); *McGinn* v. *State Bar Board of North Dakota,* supra; *Dinger* v. *State Bar Board of North Dakota,* supra, 16; *Hooban* v. *Board of Governors of Washington State Bar Assn.,* 85 Wash. 2d 774, 539 P.2d 686 (1975), appeal dismissed, 424 U.S. 902, 96 S. Ct. 1092, 47 L. Ed. 2d 306 (1976); and other cases cited in annot., Validity, Under Federal Constitution, of State Bar Examination Procedures, 30 A.L.R. Fed. 934 (1976 & Sup. 1992). Under these circumstances, we conclude that the grading procedures employed by the defendants have a rational connection to the state's substantial interest in assessing an applicant's competency to practice law. Consequently, the trial court properly denied the plaintiff's motion for summary judgment and granted the defendants' motion for summary judgment.

## II

The plaintiff next claims that the trial court improperly denied his motion for summary judgment and improperly granted the defendants' motion for summary judgment because he is constitutionally entitled, as a matter of procedural due process,[9] to a judicial hearing for the purpose of regrading his answers on the essay portion of the bar examination. We disagree.

[9] Although the plaintiff purports to rely on both the federal and state constitutions, he has failed to brief or analyze independently any state constitutional provision. Consequently, we limit our discussion to the relevant

The United States Supreme Court set forth three factors to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." Id.

Application of the *Mathews* test to the present case compels the conclusion that a judicial hearing to regrade the applicant's essay answers is not constitutionally required. Admittedly, under the first prong of *Mathews,* an applicant has a strong interest in pursuing his chosen profession. *Tyler* v. *Vickery,* supra, 1104. An individual does not have, however, an absolute right to practice law. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957); *Jones* v. *Board of Commissioners of Alabama State Bar,* 737 F.2d 996, 1002 (11th Cir. 1984). Whether the applicant's interest is of sufficient weight to compel the requested relief can be determined only by analyzing the second and third prongs of *Mathews. Lucero* v. *Ogden,* 718 F.2d 355, 358–59 (10th Cir. 1983),

federal constitutional claim. *State* v. *Joly,* 219 Conn. 234, 258 n.16, 593 A.2d 96 (1991).

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law . . . ."

cert. denied, 465 U.S. 1035, 104 S. Ct. 1308, 79 L. Ed. 2d 706 (1984).

The applicant's interest "militates . . . in favor of a hearing only if hearings are [a] demonstrably more efficacious means of safeguarding that interest than" the other procedural protections that the defendants currently provide. *Tyler* v. *Vickery,* supra, 1104. In the present case, there is no evidence that the defendants' grading system is not effective in revealing grading errors or that it inadequately guards against the risk, if any, of an erroneous deprivation of an applicant's interest.[10] On the contrary, there is uncontroverted evidence that the defendants' system of grading, by providing multiple rereadings of examinations that fall within ten points of a passing score, effectively protects against idiosyncratic or arbitrary grading. Although the grading of any essay examination may involve some inherent subjectivity, the potential capriciousness of any one grader is significantly reduced by: (1) the use of examination numbers to protect the identity of the applicant; (2) the use of a model answer by which to measure an applicant's answer; (3) the regrading of any examination that falls within ten points of passing; and (4) the consultation between graders, and the use of a consensus grade, if the two graders' scores differ by more than one point.

In support of his motion for summary judgment and in opposition to the defendants' motion for summary judgment, the plaintiff did not offer any evidence that the relief he requested would reduce the likelihood of grading errors. The regrading of an answer by a Superior Court judge would not lessen the inherent subjectivity of grading the essay answers. To the contrary, the risk of arbitrary grading would be likely to increase

---

[10] The plaintiff has not claimed that the defendants committed a mathematical error in computing his total score. His claim is simply that he was entitled to a higher score on several of his answers to the essay questions.

if a judge were to regrade an answer because: (1) the applicant's anonymity would be lost; and (2) the scoring judge would not have had the benefit of a calibration session and the experience of grading multiple answers.

Furthermore, the defendants provided evidence, pursuant to their summary judgment burden, of an additional procedural safeguard to protect applicants from arbitrary grading: an unlimited right to retake the bar examination. Most courts have found that the right to retake the examination, by itself, provides adequate procedural protection to a bar applicant. See, e.g., *Jones* v. *Board of Commissioners of Alabama State Bar,* supra, 1003 (lack of judicial hearing does not violate due process because candidate may take examination up to five times); *Lucero* v. *Ogden,* supra, 358; *Poats* v. *Givan,* 651 F.2d 495, 497 (7th Cir. 1981) (right to retake examination four times); *Tyler* v. *Vickery,* supra, 1104; *In re Mead,* 372 Mass. 253, 256, 361 N.E.2d 403 (1977), cert. denied, 434 U.S. 858, 98 S. Ct. 182, 54 L. Ed. 2d 131 (1977). As the United States Court of Appeals for the Fifth Circuit reasoned, even if we assume, generously, that one out of every one hundred applicants who fail the bar examination would have passed but for arbitrary grading, the probability that the same applicant would be the victim of a grading error after two examinations is literally one in ten thousand.[11] *Tyler* v. *Vickery,* supra.

---

[11] We note that the Fifth Circuit Court of Appeals in *Tyler* v. *Vickery,* 517 F.2d 1089, 1104 (5th Cir.), reh. denied, 521 F.2d 815 (5th Cir. 1975), cert. denied, 426 U.S. 940, 96 S. Ct. 2660, 49 L. Ed. 2d 393 (1976), stated the probability that the same applicant would be the victim of a grading error after two examinations is "literally one in a million." Although we do not profess to any particular acumen for the theory of probabilities, our research reveals that, under the assumptions applied by the Fifth Circuit, the probability of failure is one in ten thousand. See generally R. Epstein, The Theory of Gambling and Statistical Logic (Rev. Ed. 1977) pp. 12–24. We conclude, nevertheless, that a one in ten thousand chance of a grading error does not constitute, as a matter of law, an arbitrary or capricious procedure in violation of the applicant's due process rights.

With one limited exception,[12] every court addressing the question of whether an applicant is constitutionally entitled to a judicial hearing to regrade essay answers on a bar examination has concluded that a state is not obligated to provide such a hearing. See, e.g., *Jones* v. *Board of Commissioners of Alabama State Bar,* supra; *Lucero* v. *Ogden,* supra, 358; *Tyler* v. *Vickery,* supra; *In re Mead,* supra; *Mississippi Board of Bar Admissions* v. *Applicant F.,* supra, 384 ("[w]e decline Applicant F's invitation that we usurp [the bar examiner's] duties and responsibilities by regrading his examination"); *Petition of Pacheco,* supra, 604; *Loeb* v. *New York State Bar Board of Law Examiners,* supra; *McGinn* v. *State Bar Board of North Dakota,* supra, 867; *Petition of Wayland,* supra, 1387; and other cases cited in annot., Court Review of Bar Examiners' Decision on Applicant's Examination, 39 A.L.R.3d 719 (1971 and Sup. 1992). Courts have consistently refused to embark on any inquiry into the integrity of examination results in the absence of clear and unequivocal allegations of probative facts that would establish fraud, imposition, discrimination or manifest unfairness on the part of the bar examiners. See, e.g., *Feldman* v. *State Board of Bar Examiners,* 438 F.2d 699, 704 (8th Cir. 1971); *Staley* v. *State Bar of California,* 17 Cal. 2d 119, 121, 109 P.2d 667 (1941); *In re Reardon,* 378 A.2d 614, 618 (Del. 1977); *Petition of Pacheco,* supra; *In re Thorne,* 635 P.2d 22, 23 (Utah 1981); *Hooban* v. *Board of Governors of Washington State Bar Assn.,* supra. In the present case, the plaintiff has not asserted any facts to support such a claim.

---

[12] In *Richardson* v. *McFadden,* 540 F.2d 744, 752 (4th Cir. 1976), cert. denied, 435 U.S. 968, 98 S. Ct. 1606, 56 L. Ed. 2d 59 (1978), the United States Court of Appeals for the Fourth Circuit stated that it was not persuaded that reexamination is a more effective remedy than judicial review. The court, however, did not analyze whether reexamination satisfies due process, but only concluded that "reexamination is [not] a more effective remedy than review." Id. No court has cited this statement in *Richardson* with approval. Moreover, the court did not need to reach that issue, and

Finally, pursuant to the third prong of *Mathews,* requiring a judicial hearing for the purpose of regrading an applicant's essay answers would impose a substantial fiscal and administrative burden on the judicial system. As a practical matter, there is a significant risk that virtually every candidate who failed the bar examination, having little to lose, would request a judicial regrading of the examination answers. A flood of biannual petitions would impose an "intolerable burden" on the court system. See *Lucero* v. *Ogden,* supra, 358; *Tyler* v. *Vickery,* supra, 1105; *Whitfield* v. *Illinois Board of Law Examiners,* 504 F.2d 474, 478 (7th Cir. 1974). Such a burden is unjustified if the procedural protections to be gained from such a burden are minimal or nonexistent.

The ultimate balance of the relevant factors compels the conclusion that a judicial hearing for the purposes of regrading the plaintiff's answers on the essay portion of the examination is not necessary to assure fundamental fairness. Consequently, pursuant to our consideration of the factors set forth in *Mathews,* we conclude that a bar applicant is not constitutionally entitled to such a hearing, and thus the trial court properly denied the plaintiff's motion for summary judgment and granted summary judgment for the defendants.[13]

thus the statement was dicta. See *Lucero* v. *Ogden,* 718 F.2d 355, 357 (10th Cir. 1983), cert. denied, 465 U.S. 1035, 104 S. Ct. 1308, 79 L. Ed. 2d 706 (1984).

[13] The plaintiff also argues that, despite the lack of a statutory or Practice Book provision providing for a right to a judicial hearing for the purpose of regrading his answers, he is nonetheless entitled to this procedure because of an "informal" state history of allowing such hearings. The plaintiff does not cite, however, nor does our research uncover, any case in which a court regraded an applicant's answers. Although we have reviewed the defendants' denial of a candidate's application for admission on character grounds; see, e.g., *Fairfield Bar Committee* v. *Esterman,* 174 Conn. 548, 392 A.2d 452 (1978); *In re Application of Dinan,* 157 Conn. 67, 244 A.2d 608 (1968); we have not inquired into the defendants' decision that a given applicant is not minimally competent to practice law in Connecticut. Consequently, we decline to hold that the plaintiff is entitled to a proceeding that simply does not exist, and has not existed, under our law.

## III

The plaintiff's final claim is that the trial court improperly denied his motion to strike the defendants' special defense of sovereign immunity. The trial court, however, did not predicate its grant of summary judgment for the defendants on the doctrine of sovereign immunity. Consequently, the plaintiff is not aggrieved by the trial court's denial of his motion to strike the special defense. Furthermore, the defendants have not raised on appeal the issue of sovereign immunity, either as a basis of a cross appeal, or as an alternate ground to sustain the judgment of the trial court. We need not, therefore, consider this issue.

The judgment is affirmed.

In this opinion CALLAHAN, SANTANIELLO and F. X. HENNESSY, Js., concurred.

BERDON, J., dissenting. The defendants, the Connecticut bar examining committee and its administrative director, have neatly packaged their procedures with what they consider to be checks and balances to ensure that bar examinations are fairly graded. They fail, however, to address one aspect of due process that I consider to be of great importance—the perception of fairness. The plaintiff's only avenue for review of his essay examination was by the same committee responsible for his original grade, albeit different examiners. Furthermore, the plaintiff was never given the opportunity to confront the examiners in order to explain his position. In short, the review of his essay examination, which is very subjective, is, in the eyes of the applicant, part and parcel of the "Good Ole Boys" club—that is, by the same persons responsible for preparing, establishing the standards for and grading the examination. I do not believe this passes constitutional muster. I conclude that due process requires another level of review.

It is clear that a bar applicant must be afforded the protections of due process under the fourteenth amendment to the United States constitution. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238–39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957); note, "Admission to the Bar: A Constitutional Analysis," 34 Vand. L. Rev. 655, 712 (1981). That process, however, must have "the appearance of evenhanded justice which is at the core of due process." *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 469, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971) (Harlan, J., concurring) (criminal contempt proceedings); L. Tribe, American Constitutional Law (2d Ed. 1988) § 10-16, p. 745.

The facts of the present case underscore why an applicant should be given a postexamination hearing by a board other than the examining committee that administered the examination. The plaintiff, a graduate of Georgetown Law School, a distinguished law school, obtained a converted score of 262.79 on the July, 1989 bar examination, which was below the passing converted score of 264.[1] Two of the plaintiff's twelve essay questions received grades of only one out of a possible seven points. Another essay question received a mere two out of seven. If the plaintiff had received a raw score of one-half point more on any of the essay questions, including any of the above questions on which he only received one or two out of a possible seven points, he would have obtained the required converted score of 264. The diminutive value of one half of one point of a total of eighty-four possible points on a subjective examination is obvious.

The plaintiff claims that errors were made in the grading of his essay questions and that the grading process was "arbitrary and capricious." In opposition to the defendants' motion for summary judgment, the

---

[1] On the February, 1990 bar exam he received a score of 260.67.

plaintiff submitted the questions and his answers. The majority concedes, as it must, that the essay questions are subjective. And in the field of jurisprudence, that subjectivity is at its highest. I take judicial notice of the fact that the "right" answers in the law today may be the wrong answers for tomorrow. For example, the "separate-but-equal" doctrine endorsed by the United States Supreme Court in *Plessy* v. *Ferguson,* 163 U.S. 537, 16 S. Ct. 1138, 41 L. Ed. 256 (1896), which segregated African-Americans, would not be tolerated as a right answer today. Nor would we accept today as passing constitutional muster a regulation that prohibited women from practicing law as the United States Supreme Court held in *Bradwell* v. *Illinois,* 83 U.S. (16 Wall.) 130, 21 L. Ed. 442 (1873).

Given the fact that essay examinations are extremely subjective, that the plaintiff's converted score of 262.79 missed the mark by a mere one half of 1 percent, and that he was never given an opportunity to argue his position directly to the examiners who reviewed his initial score, it is understandable why he or any other person in his position would perceive that those who judged his examination were not evenhanded and that the system is not fair.

The majority, however, has a bottom line answer to this due process claim—that is, the plaintiff and others similarly situated can always retake the examination. I cannot accept this bottom line. In response to a similar argument, the Fourth Circuit Court of Appeals replied *"once is enough."* (Emphasis added.) *Richardson* v. *McFadden,* 540 F.2d 744, 752 (4th Cir. 1976) ("To our knowledge, a person is not required by any state to repeatedly demonstrate his competence to practice law. The rule is: once is enough. And the reason for the rule is that it takes work, effort, and, nowadays, money to prepare for a bar examination. Moreover, the license is deemed of sufficient value that

delay in getting it is an injury.''). I am sure that this sentiment would be echoed by most law school graduates, even those who have been admitted to the bar.

Accordingly, I would reverse the trial court's granting the defendants' motion for summary judgment and remand the matter for further proceedings.