[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
FACTS
On February 11, 1991, plaintiff Vincent A. Cimino filed single count complaint against Hendel's Incorporated seeking CT Page 2211 damages for breach of contract as an intended beneficiary of the contract. Plaintiff is the owner of a gasoline service station in the City of West Haven. Lawrence Pearson, who is not a party to this action, was to lease plaintiff's service station. Pearson and the defendant ("Seller") executed an agreement (hereinafter "contract"), dated April 10, 1986, for the sale of gasoline and motor oil from the defendant to Pearson. This contract states, inter alia, that "Seller shall install upon said premises of Buyer, at Seller's expense and costs, such items of personal property as Seller may deem necessary or advisable, including specifically the following: 1- 4,000 Gallon Underground Storage Tank. . . ." The contract further provides that,
 Seller shall . . . Maintain equipment during 5 year contract.
 Seller shall indemnify and hold harmless the Buyer and property owner of record for any damage incurred by leaking of product from gasoline storage tanks. Tanks covered are:
4,000 gallon tank (installed by Seller)
 *1- 6,000 gallon tank- in ground at time of agreement
 *1- 10,000 gallon tank- in ground at time of agreement
* — And any other tanks installed by Seller
 * Owner shall provide documents verifying tanks have been tested and found to not be leaking as of commencement of this agreement.
 Seller shall indemnify and hold harmless the Buyer and property owner of record for and on account of any damages caused to any person or to any property as a result of any leaking of product, spillage of product, explosion or any other present or future defect, malfunction or break-down of or from any storage tanks that are presently on or in the premises or that in the future shall be on or in the premises.
(Plaintiff's Complaint, Exhibit A.) CT Page 2212
Plaintiff claims that defendant failed to replace the 6,000 and 10,000 gallon tanks and thus breached the maintenance obligation under the agreement. As a result of this breach, plaintiff asserts that Pearson abandoned the property. Plaintiff claims that, as the owner of the property, he was an intended beneficiary of the agreement between the defendant and Pearson, and seeks damages on this ground.
On December 22, 1993, the defendant filed a motion for summary judgment with an accompanying memorandum of law. Plaintiff filed a memorandum in law in opposition to defendant's motion on January 7, 1994.
STANDARD
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "[S]ummary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm,224 Conn. 524, 530, 620 A.2d 99 (1993). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Id., 530-31.
DISCUSSION
"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction." Unisys Corporation v. Department of Labor, 220 Conn. 689, 693, 600 A.2d 1019 (1991).
 Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.
Id.
"It is well-established that a person who is neither a party to a contract or a contemplated beneficiary of it cannot bring an action to enforce the promises of the contract." Merz v. Otis CT Page 2213 Elevator Company, 8 CSCR 1051 (September 17, 1993, Fuller, J.).
 [T]he ultimate test to be applied [in determining whether a person has a right of action as third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties.
(Internal quotation marks omitted; citations omitted.) Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325, 189 A.2d 386
(1963).
The contract specifically states that the seller, the defendant, shall indemnify and hold harmless the buyer and property owner of record for any damage caused by leaking from the tanks. Pursuant to this contract provision, then, the parties to the contract intended that the defendant assume a direct obligation to the plaintiff, as the property owner. While the cause of action presently asserted by the plaintiff does not seek damages for injury from leaking tanks, the court finds that the plaintiff has standing to bring the present action.
"Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75, 439 A.2d 314 (1981). However, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted; citations omitted.) Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 158, 595 A.2d 872 (1991). "It is not within the power of the courts to create new and different agreements." (Internal quotation marks omitted, citations omitted.) Id., 159.
 In interpreting contract terms, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be CT Page 2214 sensibly applied to the subject matter of the contract.
(Internal quotation marks omitted; citations omitted.) Sturman v. Socha, 191 Conn. 1, 10, 463 A.2d 527 (1983).
 Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings.
(Internal quotation marks omitted; citations omitted.) Barnard v. Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990). "A contract is to be construed as a whole and all relevant provisions will be considered together." Id., 109.
The defendant concedes that the aforementioned contract was executed by the defendant and Pearson, that the plaintiff was the owner of the property at the time of the contract, and that the defendant did not replace the 6,000 gallon tank or the 10,000 gallon tank. The defendant argues that the contract did not impose any obligation on the defendant, as the seller, to replace the 6,000 gallon and 10,000 gallon tanks on the leased premises. Instead, the defendant submits that the contract imposes only maintenance and indemnification obligations. Accordingly, the defendant contends that, as a matter of law, the contract imposes no obligation upon the defendant to replace the 6,000 gallon and 10,000 gallon tanks.
The plaintiff submits that both the maintenance and indemnification provisions of the contract obligated the defendant to "take whatever steps were reasonably necessary to make and keep all of the underground tanks suitable for accepting petroleum products during the entire term of the [contract]," including replacement of the tanks. Plaintiff argues that the contract language is not clear and definitive, and that the word "maintain" in the contract "contemplates and was intended to include" the potential for replacement of the tanks. (Plaintiff's Memorandum, p. 9.) Plaintiff further contends that interpretation of contract language is a question of fact and thus inappropriate for summary judgment. CT Page 2215
The contract between the defendant and Pearson provides that the defendant must "maintain the equipment" and "indemnify . . . the Buyer and property owner. . . ." The contract language is clear and definitive, and thus an interpretation of the contract is a question of law. While the contract specifically provided for the installation of a 4,000 gallon tank, the contract is devoid of any language expressing an intent to provide for the replacement, as opposed to maintenance, of the two larger tanks. "The word `maintenance' . . . has no precise legal significance; its meaning varies with the purpose to be accomplished." Saphir v. Neustadt,177 Conn. 191, 203, 413 A.2d 843 (1979). But, the natural and ordinary meaning of "maintain" does not contemplate the replacement and installation of new equipment. Accordingly, the defendant did not breach the contract by failing to replace the 6,000 and 10,000 gallon gasoline tanks, and thus is entitled to judgment as a matter of law.
CONCLUSION
Based on the foregoing, the defendant's Motion For Summary Judgment is granted.
So ordered.
Michael Hartmere, Judge