[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#163)
This action arises from a loan transaction among First Constitution Bank ("FCB") as the lender; Mount Maumee Partnership ("Mount Maumee") as the borrower; and Dutchy Associates Limited Partnership, Gene L. Simms, William D. Davies, Jr., Roger J. Frechette, Barbara J. Frechette, Lawrence G. Copeland, and John T. Marvin, as the guarantors. The transaction closed on April 5, 1989 and consisted of twelve (12) loan documents, including (i) a loan agreement in the principal amount of $5,233,000.00 executed by Mount Maumee in favor of FCB; (ii) a guaranty agreement executed by the guarantors in favor of FCB; and (iii) a construction completion guaranty executed by the guarantors in favor of FCB.
On August 20, 1992, prior to the inception of the present action, Mount Maumee and a group of the guarantors filed a seven count complaint in his court against FCB.[1] In that action, the plaintiffs alleged CT Page 6056 breach of contract, negligence, breach of fiduciary duty, breach of good faith and fair dealing, reckless indifference, and detrimental reliance in connection with FCB's loan obligations. On September 23, 1992, FCB instituted a collection action in Bridgeport Superior Court against Mount Maumee and all of the guarantors on the ground that Mount Maumee and its guarantors failed to pay all amounts due under the obligations of the loan transaction.
On October 2, 1992, FCB was declared insolvent or in such condition that it was unsafe to continue business. Pursuant to an order of Ralph Shulansky, Commissioner of Banking in Connecticut, the Federal Deposit insurance Corporation ("FDIC") was appointed receiver.[2] On the same day, the FDIC transferred to First Federal Savings Bank ("First Fed"), by a purchase and assumption agreement, the right to enforce the lean agreement, note, guaranty agreement, and construction completion guaranty. On April 5, 1993, the court (Leheny, J.) granted First Fed permission, over an objection and an appeal to the Appellate Court, to be substituted for the party plaintiff in the Bridgeport collection matter. On May 17, 1993, that case was then transferred by the court (Leheny, J.), pursuant to the prior pending case doctrine, from the judicial District of Fairfield at Bridgeport, to the judicial District of Litchfield.
On April 13, 1993, First Fed filed an amended complaint against Mount Maumee Partnership and all of the guarantors. First Fed alleges that as a result of its purchase and assumption agreement with the FDIC, it is the bona fide owner of the note and the loan agreement.
Count one of First Fed's amended complaint is directed against Mount Maumee and alleges that on August 19, 1992, a written demand was made upon Mount Maumee as the borrower and that Mount Maumee failed to make payment in accordance with the demand. In count two of its amended complaint, First Fed alleges that the guarantors by an agreement dated April 5, 1989 jointly, severally and unconditionally guaranteed the payment and performance of any and all obligations of Mount Maumee to FCB. First Fed alleges further that on August 19, 1992, a written demand for payment was made upon the guarantors CT Page 6057 and that the guarantors failed to make payment in accordance with the demand. In count three of its amended complaint, First Fed alleges that pursuant to the construction completion guaranty dated April 5, 1989, the guarantors jointly, severally and unconditionally guaranteed for the benefit of FCB the completion of all construction of certain subdivision improvements. The plaintiff alleges further that under the completion guaranty, the guarantors agreed to indemnify and repay to FCB any and all sums advanced by FCB for construction and completion of the improvements. First Fed alleges that the amounts due under the completion guaranty have not been paid and the guarantors are therefore in default.
On October 21, 1993, the defendants Mount Maumee, William Davies, Barbara Frechette, Roger Frechette, John Marvin, and Lawrence Copeland filed a motion for summary judgment on all counts of the plaintiff's complaint. The motion was denied by the court. (February 22, 1994, Dranginis, J.) The defendants subsequently were granted permission to reargue the motion for summary judgment and the court (Dranginis, J.) heard oral argument on February 28, 1994. Additionally, the plaintiff and the defendants have submitted numerous memoranda of law and attachments, outlining their claims of law.
The summary judgment procedure "is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." Mac's Car City, Inc.v. American National Bank, 205 Conn. 255, 261,532 A.2d 1302 (1987). "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Wilson v. New Haven,213 Conn. 277, 279, 567 A.2d 829 (1989). The party seeking summary judgment has the burden of showing the nonexistence of any material fact. Scinto v. Stamm,224 Conn. 524, 531, 620 A.2d 99 (1993). "A `material' fact has been defined adequately and simply as a fact which will make a difference in the result of a case." (Citations omitted.) United Oil v. Urban RedevelopmentCommission, 158 Conn. 364, 379, 260 A.2d 596 (1969). "In deciding a motion for summary judgment the court must CT Page 6058 view the evidence in the light most favorable to the nonmoving party." Connell v. Colwell, 214 Conn. 242, 246,571 A.2d 116 (1990).
The defendants base their motion for summary judgment on the federal statutory scheme of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). FIRREA is comprehensive federal legislation intended to improve he financial condition of the savings and loan industry and to dispose of the assets of hundreds of insolvent savings and loans institutions whose deposits were federally insured. Specifically, the defendants argue that they are entitled to judgment as a matter of law because First Fed violated 12 U.S.C. § 1821(e)(9)(A)(i), (ii), (iii) and (iv). That statute, in pertinent part states:
 (9) Transfer of qualified financial contracts. In making any transfer of assess or liabilities of a depository institution in default which includes any qualified financial contract, the conservator or receiver for such depository institution shall either —
 (A) transfer to 1 depository institution (other than a depository institution in default) —
(i) all qualified financial contracts between
 (I) any person or any affiliate of such person; and
 (ii) the depository institution in default;
 (ii) all claims of such person or any affiliate of such person against such depository institution under any such contract (other than any claim which, under the terms of any such contract, is subordinated to the claims of general unsecured creditors of such institutions);
(iii) all claims of such depository institution CT Page 6059 against such person or any affiliate of such person under any such contract; and
 (iv) all property securing any claim described in clause (ii) or (iii) under any such contract . . . .
 (B) transfer none of the financial contracts, claims, or property referred to in subsection (A).
U.S.C. § 1821(e)(9).
In subsection (e) of § 1821 of FIRREA, Congress explained how to treat contracts which were entered into prior to the appointment of a conservator or receiver. In general, the Act grants to the receiver or conservator the power to "disaffirm or repudiate" any contract or lease that the receiver or conservator determines to be "burdensome" or inconsistent with promoting "the orderly administration of the institution's affairs."§ 1821(e)(1)(B) (C); see also Atlantic Mechanical,Inc. v. RTC, 772 F. Sup. 288, 292 (E.D.Va. 1991), aff'd953 F.2d 637 (4th Cir. 1992). The receiver also generally has the power selectively to transfer any asset or liability of a failed institution "without any approval, assignment, or consent with respect to such a transfer."§ 1821(d)(2)(G)(II)(ii). Further, the receiver may avoid certain preferential or fraudulent transfers.§ 1821(d)(17). Thus, FIRREA confers extremely broad powers upon receivers and conservators of failed depository institutions. Gross v. Bell Savings Bank,974 F.2d 403, 407 (3rd Cir. 1992).
A few exceptions to this broad power exist with respect to the receiver's treatment of Qualified Financial Contracts ("QFCs"). In § 1821(e)(9), Congress established a specific procedure for the transfer of QFCs between receivers, conservators, and acquirers.Resolution Trust Corporation v. Cheshire ManagementCompany, Inc., 18 F.3d 330, 335 (6th Cir. 1994).
 This transfer is an "all or nothing" proposition. The [receiver] must either transfer to another institution all of the CT Page 6060 QFC's that exist between he failing bank and a particular entity or none of them. This requirement exists so that the QFC's are not dispersed among several banks, allowing the holder of the QFC to preserve its ability to `set off' its liabilities to the failed bank against its assets. See H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., reprinted in 1989 U.S. Code Cong. Admin. News. 86, 127-28.
Id., 336.
The defendants argue that the twelve documents which comprise the original loan agreement between FCB, Mount Maumee, and the quarantors [guarantors], form one unified contract. Relying on the definition of a "securities contract" in§ 1821(e)(8)(D) (ii), the defendants label that unified contract a QFC and argue that contrary to the express terms of § 1821(e)(9), First Fed is attempting to divide a QFC by accepting the assets of FCB, but not accepting the liabilities. In support of this contention, the defendants attach interrogatories from Mount Maumee, etal. v. FDIC, in U.S. District Court, in which the FDIC admits that it transferred to First Fed all claims of FCB against Mount Maumee et al, yet states further it did not transfer all claims of Mount Maumee et al, against FCB. The defendants contend that this admission proves that the transfer to First Fed violates the prohibition against splitting a QFC pursuant to the relevant sections of FIRREA which mandate that the transfer of a QFC must occur in its entirety, or not a all.
In opposition to the motion for summary judgment, the plaintiff directs he court to specific sections of the purchase and assumption agreement and argues that the FDIC in its capacity as receiver did transfer to First Fed the assets and liabilities of the failed bank. The plaintiff concedes that it would be responsible for the liabilities under any QFCs assumed, yet asserts that the original loan documents evidence a standard construction loan and cannot be classified as a QFC. The plaintiff rebuts the defendants' interpretation of § 1821(e)(8)(D)(ii) which, the defendants argue, qualifies the loan transaction as a securities contract and thus a QFC. In so doing, the plaintiff directs the court to the CT Page 6061 definition of a "securities contract" in 11 U.S.C. § 741(7). The plaintiff, argues additionally that any claims arising out of the actions of a failed bank, are enforceable only against the FDIC in its capacity as the receiver thereof.[3]
The term "qualified financial contract" is defined in FIRREA as "any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any other similar agreement that the Corporation determines by regulation to be a qualified financial contract for purposes of this paragraph."§ 1821(e)(8)(D)(i). A "securities contract" is defined in§ (e)(8)(d) (ii). That section of he statute provides:
(ii) The term "securities contract"
(I) has the meaning given to such term in section 741(7) of Title 11 except that the terms "security" (as used in such section) shall be deemed to include any mortgage loan, any mortgage-related security (as defined in section 78c(a)(41) of Title 15), and any interest in any mortgage loan or mortgage-related security. . . .
Id.
The defendants argue that the original loan transaction which was subsequently transferred to First Fed is a QFC according to the explicit language in the above definition. The defendants focus on the use of the words "mortgage'["] and "mortgage-related security" and conclude that "any mortgage is self defining, and, is a qualified financial contract." (Defendants' memorandum in support of summary judgment, October 22, 1993, p. 26). FIRREA, however, defines a "securities contract" by incorporating the definition contained in the Bankruptcy Code, 11 U.S.C. § 741 (7), which defines such a contract as:
 [a] a contract for the purchase, sale, or loan of a security, including an option for the purchase or sale of a security, certificate of deposit . . . . or any option entered into on a national securities exchange relating to foreign currencies . . . . CT Page 6062
Id.
In categorizing a transaction as a QFC, it is important to bear in mind that it is the contract to buy,sell, loan, or borrow a "security" and not the underlying security which constitutes a QFC. (Emphasis in original.) FIRREA Receivership and Conservatorship Law, Michael K. Slattery, § 9.03 [1]. The original loan transaction between FCB, Mount Maumee, and the guarantors is arguably a "security" according to the terms of§ 1821(e)(8)(D) (ii). However, even if categorized as such, it is merely an underlying security and does not involve a contract to buy, sell, loan or borrow a security. Accordingly, this court holds as a matter of law that the loan transaction executed between FCB, Mount Maumee, and the guarantors, which was subsequently purchased by First Fed, is not a qualified financial contract. For the foregoing reason, the defendants do not have a valid claim pursuant to § 1821(e)(9). The defendants' motion for summary judgment is denied.
DRANGINIS, J.