[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION FOR SUMMARY JUDGMENT
In 1983, the plaintiff, Frank Colman was employed by Louis DeSimone, one of the defendants in the present action. On July 11, 1983, Colman, during the course of his employment and with DeSimone's permission, was operating an automobile owned and insured by DeSimone. While operating the vehicle, Colman was involved in an accident and sustained injuries. Colman exhausted the insurance of the individual who owned the other car involved in the collision. In addition, Colman received worker's compensation benefits through DeSimone. He then sought uninsured motorist [UM] benefits from DeSimone's insurer, CNA Insurance Company [CNA], the other defendant in this action.
CNA denied coverage and, in October, 1987, Colman sought to compel arbitration. The parties eventually submitted the claim to arbitration which resulted in a decision in Colman's favor, issued on January 9, 1990. On February 6, 1990, CNA filed an application in Superior Court to vacate the arbitrators' decision. On December 11, 1990, the court, Jones, J., vacated the arbitrators' decision. Colman appealed and the Appellate Court ruled in his favor. CNA Insurance Company v. Colman, 25 Conn. App. 651,595 A.2d 949. (1991). CNA then appealed and the Supreme Court found in its favor, holding that the exclusive remedy provision of the workers' compensation statute precludes recovery of UM benefits from an employer's insurer in the absence of an agreement between the employee and employer for the provision of additional benefits. CNA Insurance Co. v. Colman,222 Conn. 769, 610 A.2d 1257 (1992).
In a complaint dated December 7, 1992, Colman and his wife initiated a second action naming CNA and DeSimone as defendants. An amended complaint, dated July 19, 1993, contains 18 counts. Counts 1[,] 5, 9, 13, and 17, directed at CNA, are substantive counts. Counts 2, 6, 10, 14 and 18 are derivative loss of consortium claims by Colman's wife. Counts 3, 7, 11, and 15, directed at DeSimone, are also substantive counts. Counts 4, 8, CT Page 9552 12, and 16 are derivative loss of consortium claims by Colman's wife.
On, February 23, 1994, DeSimone filed a motion for summary judgment, with respect to the counts directed at him, accompanied by a supporting memorandum of law and exhibits. On April 22, 1994, Colman filed a memorandum of law in opposition to DeSimone's motion for summary judgment. On May 20, 1994, DeSimone filed a reply to Colman's opposition.
In a motion dated June 16, 1994, CNA moved for summary judgment. CNA's motion was accompanied by a supporting memorandum of law and exhibits. In opposition, Colman filed an affidavit by his attorney. In addition, Colman represented to the court that his memorandum of opposition to DeSimone's motion for summary judgment contains his opposition to CNA's motion for summary judgment.
THE LAW
Summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Scinto v. Stamm,224 Conn. 524, 530, 620 A.2d 99 (1993). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Id.
Most of the factual allegations made against each defendant in the amended complaint are contained in the first count of the complaint and subsequently incorporated into the later counts. In his complaint, Colman alleges that CNA sold DeSimone a personal automobile insurance policy containing UM benefits. He further alleges that when he used DeSimone's vehicle he knew it was insured under a personal automobile insurance contract, that he relied on that insurance, and that he expected to be covered under that policy. He alleges that as a permissive user of the car he was an insured under the contract. He also alleges that as a permissive user who was injured, he was a third party beneficiary under the insurance contract.
I. Claims against DeSimone
All counts direct at DeSimone seem to be based on the same basic allegations: that DeSimone assisted CNA in depriving Colman CT Page 9553 of benefits owed him by failing to demand that CNA adhere to its policy, failing to provide Colman with information about and a copy of the policy and failing to respond to Colman's requests for information.
The well researched briefs of both parties raised several issues for the court's consideration, much of it having to do with interpretation of the previous legal proceedings, with particular reference to the Supreme Court's decision in CNAInsurance Co. v. Colman, 222 Conn. 769 (1992). Irrespective of the disputed interpretations of that case it is clear that the Colman
and companion case of Bouley v. Norwich, 222 Conn. 744, (1992) allow for "outs" from the exclusivity restrictions of the Workermen's Compensation Act including under the statutory exemption that allows an employee to secure "by agreement with this employer, additional compensation for the injury." Connecticut General Statutes § 31-284(a).
However, nowhere in his amended complaint has the plaintiff alleged any sort of agreement between himself and his employer to provide additional benefits. He does not allege that he and DeSimone agreed that he would receive coverage through DeSimone. He has only alleged that he relied on DeSimone's insurance and that DeSimone would not let him drive the car without proper insurance on it. The omission is fatal. The motion to grant summary judgment as to the defendant, DeSimone, is granted as to counts 3, 7, 11 and 15. Summary judgment is also granted as to counts 4, 8, 12 and 16 since loss of consortium claims are derivative in nature. Sanzone v. Bowel of Police Commissioners, 219, Conn. 179, 199 (1991).
II. Claims against CNA
The claims against CNA are based on the following allegations, set forth in the first count of the complaint. Colman alleges that CNA deprived insureds, including himself, of the protection and benefits of the policies it sold to DeSimone and others. Colman alleges that as a permissive user of DeSimone's automobile he was an insured under the insurance policy. Colman alleges that CNA refused him benefits even though CNA knew he was entitled to benefits under the insurance policy. Colman alleges unfair claims settlement practices in the handling of his claim. He also alleges that CNA breached the insurance contract with DeSimone. Finally, he alleges that CNA acted in the manner described, toward himself and other insureds to whom CT Page 9554 it sold insurance. CNA characterizes count one as a claim under the Connecticut Unfair Insurance Practices Act (CUIPA). In count five, Colman alleges that CNA's conduct constituted a breach of the covenant of good faith and fair dealing. In count nine, Colman alleges that CNA's unfair treatment of his claim was intentional, willful and reckless. In the thirteenth count, he alleges tortious breach of contract with respect to himself as a third party beneficiary. In the seventeenth counts, Colman alleges that the acts described in counts one, five, nine and thirteen constitute violations of the Connecticut Unfair Trade Practices Act (CUTPA).
In its memorandum in support of its motion for summary judgment, CNA argues first that the doctrine of res judicata bars Colman's claims. CNA also argues that the unfair settlement practices claim, which is incorporated into each count, and the CUTPA violation alleged in the seventeenth count are barred by the applicable statutes of limitations. Further, CNA argues that the CUIPA and CUTPA claims fail because the plaintiff has not alleged a pattern of unfair settlement practices. In addition, CNA argues that Colman, as a third party beneficiary to an insurance contract, may not bring an unfair settlement practices claim against it. Finally, CNA argues that each loss of consortium claim fails along with the respective underlying claim.
Colman's response to DeSimone's motion for summary judgment applies to CNA's motion also.
A. Res Judicata
Res judicata, also referred to as claim preclusion, and collateral estopppel [estoppel], also referred to as issue preclusion, are related legal doctrines.
 Claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . . [C]laim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been CT Page 9555 made. Scalzo v. Danbury, 224 Conn. 124, 127, 617 A.2d 440 (1992).
In Carnese v. Middleton, 27 Conn. App. 530, 534, 608 A.2d 700
(1992), the court found that the doctrine of res judicata was inapplicable to the action before it because the claim for damages asserted in the present action was not a claim that could have been brought in the earlier action, a summary process action. Rather, the court held that the doctrine of collateral estoppel should be applied to issues that were decided in the summary process action. The reasoning of the Carnese court applies to the present action. The basis for CNA's claim of res judicata is CNA Insurance Co. vs. Colman, 222 Conn. App. 769. All would agree that this action began as an arbitration proceeding to determine coverage under the policy. Unless the plaintiff could have brought his claims for violations of CUIPA and CUTPA, breach of convenant [covenant] of good faith and fair dealing, and tortious breach of contract in that prior arbitration proceeding, res judicata is not a proper ground for summary judgment. The arbitration was sought pursuant to the insurance policy. No more than the cover page of that policy has been submitted to the court. It is not possible for this court to determine whether the claims presented in this action could have even been submitted to the arbitrators. Therefore, CNA has not shown that res judicata bars the claims made against it in this action.
B. CUIPA CUTPA Claims
Pursuant to General Statutes § 38a-815(6) certain insurance settlement practices constitute violations of CUIPA. In addition, violations of CUIPA may constitute an unfair trade practice under CUTPA if the alleged conduct occurred with such frequency as to constitute a general business practice. Mead v.Burns, 199 Conn. 651, 509 A.2d 11 (1986). A claim of a general business practice arising out of unfair insurance settlement practices must involve more than a single claim. Leesv. Middlesex Ins. Co., 229 Conn. 842, 849, ___ A.2d ___ (1994).
CNA argues that Colman's claim fails to include an allegation that CNA's alleged unfair settlement practices constitute a general business practice. Colman has included allegations that CNA sold similar policies to other insureds. In paragraphs 31 and 32, Colman alleges that CNA "acted, and continues to act, to deprive insureds under its Personal Auto Policies, including the plaintiffs, of the protection and benefits of the `Personal Auto CT Page 9556 Policy.'" In paragraph 34, in which Colman lists specific CUIPA violations, Colman refers only CNA's treatment of his own claim. Viewing the complaint in the light most favorable to the nonmovant, Colman has sufficiently alleged that CNA's acts constituted a general business practice.
CNA also argues that the statute of limitations bars the CUIPA and CUTPA claims. The statute of limitations for claims under CUTPA is three years from the occurrence of the violation of the statute. General Statutes § 42-110g(f). CUIPA is silent as to the statute of limitations, but in a CUTPA Claim based on CUIPA violations, the CUTPA statute of limitations is applied.Lees v. Middlesex Ins. Co., 219 Conn. 644, 654, 594 A.2d 952
(1991).
Colman argues that he has alleged a continuing course of conduct beginning in 1987 and continuing through the present. Since the present claim was filed on January 26, 1993, the alleged violations must have occurred after January. 26, 1990. On January 9, 1990, the arbitrators found in Colman's favor. On February 6, 1990, CNA filed an application to vacate the arbitrators' award, beginning the appeals process that did not end until the Supreme Court rendered its decision in 1992. Even assuming that that decision bars any claims for UM benefits against CNA, it is possible that CNA committed unfair settlement practices up until that time. Whether such acts were committed is a question of fact that the court may not decide on a motion for summary judgment.
C. CUIPA Claims by a Third Party Beneficiary
CNA argues that as a third party beneficiary, Colman may not sue an insurer for unfair claims settlement practices. CNA cites several Superior Court cases for this proposition. While Colman does refer to himself as a third party beneficiary to the insurance contract, he also alleges that he is an insured under the insurance policy. As an insured he may bring a CUIPA claim. In the present case, CNA is not defending its insured, DeSimone, against Colman's claim. Rather, CNA is defending itself against Colman who argues that he is an insured under the policy. Since Colman claims the status of an insured, it is found that the reasoning of the cases submitted by CNA on this issue are not applicable. Accordingly, CNA's third party beneficiary argument does not provide a basis for granting summary judgment. CT Page 9557
Since none of CNA's arguments in support of its motion for summary judgment are sufficient to grant summary judgment, the derivative loss of consortium counts survive this motion. CNA's motion for summary judgment is denied in its entirety.
LAWRENCE L. HAUSER, JUDGE